**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ADAM BUSH; DELSEA CREEL; L.C., an infant minor, by and through her father and mother as her next best friend; and H.E, a minor, by and through his mother as her next best friend,** | ) ) ) ) ) ) ) | |
| **PLAINTIFFS,** | ) ) | |
| **v.** | ) ) | **CASE NO: _____** |
| **ALABAMA DEPARTMENT OF HUMAN RESOURCES; NANCY BUCKNER, COMMISSIONER of DHR, individually; DAN WILLIAMS, DIRECTOR OF MONTGOMERY COUNTY DHR, individually; ESTELLA DERICO, CASE AGENT for MONTGOMERY COUNTY DHR, individually; UNKNOWN FIRST NAME PRESLEY, Estella Derico's supervisor, for MONTGOMERY COUNTY DHR, Individually; THE HEALTH CARE AUTHORITY FOR BAPTIST HEALTH, AN AFFILIATE OF UAB HEALTH SYSTEM, D/B/A BAPTIST MEDICAL CENTER EAST; UNKNOWN NURSE (pursuant to _Bivens v. Six Unknown Narcotic Agents,_ 403 U.S. 388 (1971)) who was directly involved in this case; and UNKNOWN EMPLOYEE (pursuant to _Bivens v. Six Unknown Narcotic Agents,_ 403 U.S. 388 (1971)) who was directly involved in this case,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **DEFENDANTS.** | ) | |

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY.**

1

## COMPLAINT

## JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 42 U.S.C § 1983, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Middle District of Alabama under 28 U.S.C. § 1391(e). Defendants, as well as Plaintiffs, reside in this judicial district. All of the acts and omissions by Defendants giving rise to this action occurred in this judicial district.

## PARTIES

3. Plaintiff Adam Bush ("Father" or "Parents" (when referring to Father and Mother collectively)) is a resident citizen of Montgomery County, Alabama and is the Father of Plaintiff L.C., infant minor child.

4. Plaintiff Delsea Creel ("Mother" or "Parents" (when referring to Mother and Father collectively)) is a resident citizen of Montgomery County, Alabama and is the Mother of Plaintiff L.C, infant minor child, and Plaintiff H.E., minor child.

5. L.C., an infant minor, ("Infant Child") is a resident citizen of Montgomery County, Alabama and is the infant child that is the subject of this litigation, by and through her Father and Mother, as her next best friend.

6. H.E, a minor, ("Minor Child") is a resident citizen of Montgomery County, Alabama and is the brother of Infant Minor that is the subject of this litigation, by and through his Mother, as his next best friend.

7. Defendant State of Alabama Department of Human Resources ("DHR") is a governmental entity established by law.

2

8.    Defendant Nancy Buckner ("Buckner") is over the age of 19 and believed to be a resident of the State of Alabama.  She is the Commissioner of Defendant State of Alabama Department of Human Resources who is sued in her individual capacity.

9.    Defendant Dan Williams ("Williams") is over the age of 19 and believed to be a resident of the State of Alabama.  He is the Director of the Montgomery County Department of Human Resources, a division of Defendant State of Alabama Department of Human Resources, who is sued in his individual capacity.

10.    Defendant Estella Derico ("Derico") is over the age of 19 and believed to be a resident of the State of Alabama.  Derico is the case worker responsible for Infant Child's case and is an employee/agent of Defendant State of Alabama Department of Human Resources.  Derico is sued in her individual capacity.

11.    Defendant Presley ("Presley") is over the age of 19 and believed to be a resident of the  State of Alabama.  Presley, whose first name is unknown at this time, is the Supervisor responsible for overseeing employee Derico and is an employee/agent of Defendant State of Alabama Department of Human Resources.  Presley is sued in her individual capacity.

12.    Defendant The Health Care Authority for Baptist Health, an affiliate of UAB Health System, d/b/a Baptist Medical Center East ("Baptist") is a Domestic Non-Profit Corporation organized and existing under the laws of the State of Alabama.

13.    Defendant Unknown Nurse ("Unknown Nurse") (pursuant to *Bivens v. Six Unknown Narcotic Agents,* 403 U.S. 388 (1971)) who was directly involved in this case, is an employee/agent of Baptist whose true name is unknown at this time, but will be ascertained as soon as possible.  She is a nurse who tested the meconium of Infant Child without

permission or consent from Parents and violated the Constitutional rights of Parents and Infant Child.

14. Defendant Unknown Employee ("Unknown Employee") (pursuant to *Bivens v. Six Unknown Narcotic Agents,*403 U.S. 388 (1971)) who was directly involved in this case, is an employee/agent of Baptist and works in Hospital Administration, whose true name is unknown at this time, but will be ascertained as soon as possible.  Defendant is an employee in Hospital Administration who stated that Parents needed to pack up their things and leave the room, that there was nothing Baptist could do, as they were simply following protocol and following DHR's lead, who did so simply on the word of DHR employees/agents but failed to obtain proper paperwork from DHR to show that DHR had the care, custody and control of Infant Child.

## FACTUAL ALLEGATIONS

15. On November 12, 2021, Parents arrived at Baptist Medical Center East for the birth of their child, Infant Child.  Infant Child was born on November 12, 2021.  Upon being admitted to Baptist, Baptist tested Mother's urine via a peel strip panel urine test.  According to Baptist, said urine test returned a positive result for Buprenorphine (Subutex also known as suboxone).  Unknown Nurse took the urine peel strip and placed the same on a table unaccompanied and outside her custody, and left the same there for over thirty (30) minutes.  Mother was under the care of a gynecologist who prescribed suboxone to the Mother and was monitoring the same.

16. At some point after Infant Child's birth, Unknown Nurse tested Infant Child's meconium, without prior permission from Parents, and stated the meconium tested positive for

4

amphetamines. Again, Mother was under the care of a gynecologist who prescribed suboxone to the Mother and was monitoring the same.

17. On November 17, 2021, DHR filed a Dependency Complaint with the Juvenile Court of Montgomery County, Alabama, signed by Derico, asking that DHR be given custody of Infant Child. A hearing was held at some point, but parents were not given notice of the hearing and, in fact, Parents were in the hospital from November 12, 2021 through November 17, 2021 with Infant Child. Judge Calvin Williams issued an order on November 17, 2021 **DENYING** a pickup order of the minor child and Judge Williams said to release Infant Child to the Father. Parents were not aware that any action had been taken in the Juvenile Court and were not aware of said hearing.

18. However, on November 17, 2021, Derico told Parents that if they would leave Baptist and each take drug screens, and if the drug screens were negative, that Infant Child would be discharged from Baptist into Parents' custody. Derico further stated that all they had to do was to wait on Derico to arrive at the hospital so that she could follow Parents to their home for a walk through to see the conditions of the home. Derico stated that after that, there would only be occasional check-ins at the home.

19. Parents immediately agreed to everything. The Mother did request that they be tested at LabCorp directly across the street from the hospital instead of being sent to Primed, which Mother felt was unreliable. However, Derico insisted that Parents go to Primed and subsequently gave them specific directions sending them four miles in the wrong direction. Once parents arrived at the correct place, i.e. Primed, they were administered the drug screens. Parents returned to the hospital to meet with Derico. As a result of being given the wrong directions by Derico, it took Parents longer than expected and results would not be immediately

available. Nonetheless, they arrived back at the hospital within one hour, having completed their drug screens. Ultimately, the drug screen results came back negative for both Father and Mother.

20. Derico's erroneous directions caused further delay of Parents' ability to take Infant Child home with them. Derico admitted to Parents that she was new at this job, apologizing for any inconvenience in giving the incorrect address and stated that she was going to call her supervisor to find out what to do.

21. On November 17, 2023, while waiting on the return call from Derico, a nurse came into Parents' hospital room and told Parents she was taking Infant Child to the NICU for one more bilirubin test. Nurse never returned with the Infant Child. Five minutes after said Nurse left the room, Presley called Parents on the phone and stated that since they were uncooperative with DHR, Infant Child could not be released to their custody. They were then ordered to leave the hospital or security would be called to escort them out. Parents were not uncooperative but had, in fact, taken the drug screens as instructed by Derico.

22. Mother attempted to explain that Parents had not refused to provide samples for drug screens, but she had simply asked to be sent directly to a lab such as LabCorp but ultimately went to Primed as instructed by Derico. Parents did provide a sample for drug screening and both tests were negative.

23. Unknown Employee (someone in Hospital Administration) then immediately called the Parents hospital room and stated that Parents needed to pack up their things and leave the room, that there was nothing Baptist could do, as they were simply following protocol and following DHR's lead. Parents left Baptist without Infant Child, and without knowing who would be caring for Infant Child or even where Infant Child would be placed.

6

24. Unknown Employee never verified in writing that DHR had the authority to keep Infant Child. Had they done so, they would have known that Judge Calvin Williams did not enter a pickup order for DHR, but instead ordered Infant Child to be released to the Father.

25. Once the Parents arrived home, Derico called Parents on the phone at their home and seemed confused. She thought that Infant Child had been allowed to leave Baptist with Parents, however, Parents were forced to leave Baptist not knowing what was happening with Infant Child. Derico had no knowledge of where Parents' Infant Child had been taken. On November 18, 2021, DHR forced Parents and Paternal Grandparents to sign a Safety Plan wherein Infant Child was released to the Paternal Grandparents and Parents were given supervised visitation only with Infant Child.

26. Pressley and Derico knew that a pickup order was not granted by Judge Williams and knew that Judge Williams ordered that Infant Child be released to the Father, yet still told Baptist not to allow Parents to leave with Infant Child.

27. Parents and Paternal Grandparents fully complied with the Safety Plan implemented by DHR, until such time as Parents' received notification that DHR had filed a Complaint for Dependency in Juvenile Court and that Judge Williams had originally ordered that Infant Child be released to the Father on November 17, 2021. The Safety Plan implemented by DHR on November 18, 2021 was never even necessary.

28. Once Parents and Paternal Grandparents discovered what happened with the first hearing wherein Judge Williams ordered that the Father could take Infant Child home, the Parents and Paternal Grandparents stopped complying with the Safety Plan, Parents picked up Infant Child and took her home, and Parents and Paternal Grandparents did not allow DHR employees/agents to return to their home.

29. On December 28, 2021, DHR filed a second Complaint for Dependency stating that on December 6, 2021, "MCDHR received [Parents'] hair follicle and both are positive for Methamphetamine." This was **NOT** true as Parents were never asked to submit to a hair follicle test and never took a hair follicle test. DHR also stated to the Court that Parents and Paternal Grandparents failed to follow the Safety Plan.

30. After said misrepresentations to the Juvenile Court, Judge Lloria James issued a pickup order for Infant Child on December 28, 2021.

31. On December 28, 2021, DHR arrived at Parents' home at 9 p.m. with police officers to take Infant Child on the Pickup Order in which they misrepresented facts to Judge James.

32. Minor child, 7 years old at the time, became so scared when DHR and the police arrived at the home that he picked up the minor child and hid in the closet with her to keep them from taking her away.

33. During DHR's entire involvement, it is apparent they were not concerned that Parents had a seven-year-old child, Plaintiff Minor Child, in the home as well.

34. A few days after Infant Child was abruptly taken from Parents under false misrepresentations by DHR, a hearing was held. Parents were each appointed attorneys, as well as a Guardian ad Litem being appointed for Minor Child, and Parents also hired a separate attorney. By the end of the hearing, at which only Derico was present, Judge James was standing up at her bench, chastising Derico for allowing her superiors to send her into court with such misrepresentations and withholding information such as the first Order that was signed by Judge Williams releasing Infant Child to the Father.

35. Judge James returned Infant Child to Parents.

36. Infant Child and Minor Child were deprived of the love and affection of Parents and each other and each were deprived of the ability to bond with Parents and each other as siblings during such crucial and formative ages.  Infant Child was a newborn and it was a crucial time for her brain development, a time to promote attachment, and a time to develop a bond with Parents and siblings.

37. As a proximate result, Parents were subjected to economic loss, severe mental anguish and emotional distress, humiliation, and loss of custody of their Infant Child and the Minor Child and Infant Child have been subjected to the loss of the affection and bonding with Parents and each other.

## CAUSES OF ACTION

### COUNT I
### PURSUANT TO 42 U.S.C. § 1983
### Fourth, Fifth, Sixth, and Fourteenth Amendments
### DHR's Policies and Procedures are Unconstitutional
### as a Violation of Due Process; Illegal Search and Seizure; and the Right to Counsel
### Against DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee

38. Defendant DHR has developed policies and procedures (DHR Protocol to Allegations Involving Substance Affected – Exposed Children attached hereto as **Exhibit 1**) with regards to seizing children from parents.

39. Said policies and procedures implemented by DHR are in violation of Plaintiffs' constitutional rights as guaranteed by the 4th, 5th, 6th, and 14th Amendments of the United States Constitution in that by reviewing the same in their totality, they make no provisions to safeguard and ensure a persons' right to be protected against violations of due process, unreasonable search and seizure, and their right to counsel.

40. DHR's policies and procedures do not afford Parents and children their constitutional right against unreasonable searches and seizures i.e. consent to search, consent to the testing, consent to review any medical records or judicial review, i.e. probable cause for the same without a warrant; and the right to counsel.

41. Unknown Nurse seized the meconium of Infant Child without the consent of Parents or even the Parents' knowledge that the meconium would be seized or tested. Baptist and Unknown Employee failed to obtain the proper paperwork from DHR showing that DHR had custody of Infant Child and instead operated from the verbal word of DHR employees/agents. Therefore, Baptist, Unknown Nurse, and Unknown Employee acted as quasi-agents of the State.

42. Said seizure and testing constitutes an illegal search and seizure, violation of due process, and violation of right to counsel which are violations of the 4th, 5th, 6th, and 14th Amendments to the Constitution.

43. DHR, Buckner, as the State Department Commissioner of DHR, and Williams, Director of Montgomery County DHR, are responsible for creating and interpreting said Policies and Procedures. As the State Department, Commissioner of DHR, and Director of Montgomery County DHR, they are responsible for the actions and inactions of all employees/agents of DHR. Further, the State Department, Commissioner, and Director of Montgomery County DHR direct that its agents follow the policies and procedures that they create, implement, and interpret.

44. That DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee, while acting under color of law, deprived Mother, Father, Infant Child, and Minor Child of their constitutional rights thereby violating 42 U.S.C. §1983.

45. As a direct and proximate consequence of the actions and inactions of DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee, in violating their constitutional rights, Mother and Father suffered severe economic loss; Mother, Father, Infant Child and Minor Child suffered the loss of the love and affection of Infant Child at a very young and formidable age; Infant Child and Minor Child suffered the loss of the love and affection of each other at very young and formidable ages; Mother has been placed on the Statewide Child Abuse and Neglect Registry; Mother, Father, and Minor Child have suffered severe emotional and mental distress and anguish as a result of all Defendants actions and inactions; Mother and Minor Child are now required to see a counselor and psychiatrist due to the emotional and mental distress and anguish caused by all Defendants' actions and inactions.

46. Mother, Father, Infant Child, and Minor Child demand judgment against Defendants DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee jointly and severally, by way of injunctive relief, and in such an amount of compensatory and punitive damages as may be determined by the trier of facts, plus the costs of this matter.

**COUNT II**
**PURSUANT TO 42 U.S.C. § 1983**
**Fourth, Fifth, Sixth, and Fourteenth Amendments**
**Failure to Follow DHR's Own Policies and Procedures**
**Against DHR, Buckner, Williams, Derico, and Presley**

47. DHR implemented and developed policies and procedures (**Exhibit 1**) with regards to seizing children from parents. Even if these policies and procedures are subsequently found to be unconstitutional, DHR and its agents failed to follow their own protocol.

48. DHR, Buckner, and Williams, as the State Department of Human Resources, the Commissioner of the State Department of Human Resources, and the Director of Montgomery County

Department of Human Resources, are directly responsible for the actions and/or inactions and supervision of their employees.

49.   DHR's own policy states, "Per policy (CA/N Allegations And Definitions), when the report is received before the infant is discharged from the hospital, child welfare staff must: make in-person contact with the mother, the infant, hospital medical staff prior to the infants discharge, the mother's and infant's address must be verified (e.g., relatives, Medicaid records, and a home visit must be made within twelve (12) hours after the infants discharge. During this investigative process it is necessary to determine whether the child may remain safely in the home while treatment and services are provided to address the conditions which place the child at risk of serious harm. Safety assessment involves identifying and evaluating safety threats, and assessing parents' or primary caregivers' protective capacities. Child welfare staff shall be alert to safety threats and implement safety plans (in home, out-of-home [non foster care]) as needed at any time during the assessment."

50.   DHR, Williams, Derico, and Presley failed to follow their own protocol, in that they did not do any of their own required steps, but instead immediately implemented a Safety Plan removing Infant Child from Parents' custody, under false pretenses, knowing that Judge Williams signed an order releasing Infant Child to the Father. Parents were not informed of the hearing nor the Order signed by Judge Williams and were then forced under threat of foster care for their children, to sign the Safety Plan implemented by DHR, Williams, Derico, and Presley.

51.   In this case, Presley and Derico knew that Judge Calvin Williams had already denied DHR a pickup order and ordered that Infant Child to be released to the Father and they failed or refused to provide this information to Parents intentionally.

12

52.    DHR, Buckner, and Williams, as the State Department of Human Resources, the Commissioner of the State Department of Human Resources, and the Director of Montgomery County Department of Human Resources are responsible for creating and interpreting said Policies and Procedures.  As the State Department of Human Resources, the Commissioner of the State Department of Human Resources, and the Director of Montgomery County Department of Human Resources, they are responsible for the actions and inactions of all employees/agents of DHR.  Further, the State Department of Human Resources, the Commissioner of the State Department of Human Resources, and the Director of Montgomery County Department of Human Resource direct that its employees/agents follow the policies and procedures that they create, implement, and interpret.

53.    That DHR, Williams, Derico, and Presley did not allow Infant Child to be released to the Father despite Judge Williams' Order stating that Infant Child was to be released to the care of the Father. Parents were denied due process and notice was not given to Parents that a hearing was set or that a hearing was held before Judge Williams.

54.    That DHR, Williams, Derico, and Presley, while acting under color of law, deprived Mother, Father, Infant Child, and Minor Child of their Constitutional rights thereby violating 42 U.S.C. §1983.

55.    As a direct and proximate consequence of the actions and inactions of DHR, Williams, Derico, Presley,  Baptist, Unknown Nurse, and Unknown Employee, in violating their constitutional rights, Mother and Father suffered severe economic loss; Mother, Father, Infant Child and Minor Child suffered the loss of the love and affection of Infant Child at a very young and formidable age; Infant Child and Minor Child suffered the loss of the love and affection of each other at very young and formidable ages; Mother has been placed on the Statewide Child

Abuse and Neglect Registry; Mother, Father and Minor Child have suffered severe emotional and mental distress and anguish as a result of all Defendants actions and inactions; Mother and Minor Child are now required to see a counselor and psychiatrist due to the emotional and mental distress and anguish caused by all Defendants' actions and inactions.

56.   Mother, Father, Infant Child, and Minor Child demand judgment against Defendants DHR, Williams, Derico, and Presley by way of injunctive relief and monetary damages, in such an amount of compensatory and punitive damages as may be determined by the trier of facts, plus the costs of this matter.

## COUNT III
## NEGLIGENCE AND/OR WANTONNESS
## Against DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee

57.   At all times relevant to this action, DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee had a duty to use reasonable care, skill, and diligence to Father, Mother, Infant Child, and Minor Child.

58.   At all times relevant to this action, DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee had a duty to conduct themselves in a manner which was not reckless or not a conscious disregard of the rights or safety of others.

59.   DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee failed to exercise reasonable and due care under the circumstances and they recklessly and consciously disregarded the rights of Father, Mother, Infant Child, and Minor Child, thereby breaching the duty owed to Plaintiffs in the following ways:

   a.   Baptist and Unknown Nurse illegally seized and tested the meconium as a quasi-agent of the State;

   b.   Baptist and Unknown Employee had a duty to obtain the proper paperwork from DHR showing that DHR had the care, custody and control of Infant Child instead of taking

14

the verbal word of DHR and its employees/agents, however, Baptist and Unknown Employee did not do so;

c.  Derico, and Presley provided false information to the Court;

d.  DHR, Williams, Derico, and Presley failed to follow their own protocol when it came to removing Infant Child from Parents' custody;

e.  Derico and Presley failed to follow their own protocol when they lied to Parents asking them to take an additional drug test, knowing that Judge Calvin Williams had already ordered Infant Child to be released to the Father, and by forcing Parents to sign a Safety Plan on November 18, 2021;

f.  DHR, Williams, Derico, and Presley failed to follow their own protocol in making sure that children are reunited with their families in a timely manner;

g.  DHR, Williams, Derico, and Presley failed to reasonably reunite Infant Child with Parents when Judge Williams issued his order that Infant Child be released to Father; and

h.  By causing Mother to be placed on the Child Abuse and Neglect Registry.

60.  All Defendants knew or should have known that their actions as stated above would cause severe harm and emotional distress to Parents, Infant Child and Minor Child.

61.  All of Father, Mother, Infant Child, and Minor Child's damages were caused by the recklessness, carelessness, negligence, and wantonness of the actions of DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee.

62.  As a direct and proximate consequence of the actions and inactions of DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee to exercise reasonable and due care under the circumstances, Mother and Father suffered severe economic loss; Mother, Father, Infant Child and Minor Child suffered the loss of the love and affection of Infant Child at a very young and formidable age; Infant Child and Minor Child suffered the loss of the love and affection of each other at very young and formidable ages; Mother has been placed on the Statewide Child Abuse and Neglect Registry; Mother, Father and Minor Child have suffered

15

severe emotional and mental distress and anguish as a result of all Defendants actions and inactions; Mother and Minor Child are now required to see a counselor and psychiatrist due to the emotional and mental distress and anguish caused by all Defendants' actions and inactions.

63.     Mother, Father, Infant Child, and Minor Child demand judgment against Defendants DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee jointly and severally, by way of injunctive relief and in such an amount of compensatory and punitive damages as may be determined by the trier of facts, plus the costs of this matter.

## CAUSE OF ACTION IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee

64.     That the actions of DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee's actions caused Mother, Father, Infant Child, and Minor Child to suffer extreme and severe mental anguish and emotional distress, in that their actions were intentional.

65.     DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee intentionally and consciously disregarded the rights of Father, Mother, Infant Child, and Minor Child, thereby breaching the duty owed to Plaintiffs in the following ways:

a. Defendant Baptist and Unknown Nurse illegally seized and tested the meconium as a quasi-agent of the State;

b. Baptist and Unknown Employee had a duty to obtain the proper paperwork from DHR showing that DHR had the care, custody and control of Infant Child instead of taking the verbal word of DHR and its employees/agents, however, Baptist and Unknown Employee did not do so;

c. Derico and Presley provided false and misleading information to the Court;

d. DHR, Williams, Derico, and Presley failed to follow their own protocol when it came to removing Infant Child from Parents' custody;

16

e. Derico and Presley failed to follow their own protocol when they lied to Parents asking them to take an additional drug test, knowing that Judge Calvin Williams had already ordered Infant Child to be released to the Father, and by forcing Parents to sign a Safety Plan on November 18, 2021;

f. DHR, Williams, Derico, and Presley failed to follow their own protocol in making sure that children are reunited with their families in a timely manner;

g. DHR, Williams, Derico, and Presley failed to reasonably reunite Infant Child with Parents when Judge Williams issued his order that Infant Child be released to Father; and

h. By causing Mother to be placed on the Child Abuse and Neglect Registry.

66. That the conduct and actions by DHR, Williams, Derico, and Presley constitutes intentional infliction of emotional distress.

67. No reasonable person could be expected to endure said actions of DHR, Williams, Derico, Presley, and Baptist.

68. As a direct and proximate consequence of the actions and inactions of DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee, they intentionally inflicted emotional and mental distress on all Plaintiffs, and caused Mother and Father to suffer severe economic loss; Mother, Father, Infant Child, and Minor Child suffered the loss of the love and affection of Infant Child at a very young and formidable age; Infant Child and Minor Child suffered the loss of the love and affection of each other at very young and formidable ages; Mother has been placed on the Statewide Child Abuse and Neglect Registry; Mother, Father and Minor Child have suffered severe emotional and mental distress and anguish as a result of all Defendants actions and inactions; Mother and Minor Child are now required to see a counselor and psychiatrist due to the emotional and mental distress and anguish caused by all Defendants' actions and inactions.

69.   Mother, Father, Infant Child, and Minor Child demand judgment against Defendants DHR, Williams, Derico, Presley, Baptist, Unknown Nurse, and Unknown Employee jointly and severally, by way of injunctive relief and in such an amount of compensatory and punitive damages as may be determined by the trier of facts, plus the costs of this matter.

**CAUSE OF ACTION V**
**NEGLIGENT SUPERVISION**
**Against DHR, Buckner, and Williams**

70.   That Defendants DHR, Buckner, and Williams, individually and together, were negligent in their supervision of Derico and Presley by failing to supervise them as Derico and Presley intentionally failed to inform Parents that they filed a Complaint for Dependency and that a pickup order was denied and that Judge Calvin Williams ordered that Infant Child be released to the Father.  Further, they intentionally forced the Parents to sign a Safety Plan knowing that Judge Williams ordered the Infant Child to be released to the Father.   Further, Derico and Presley filed a Second Fraudulent Dependency Complaint with the Juvenile Court of Montgomery County, Alabama with the same facts and circumstances, plus additional circumstances, asking yet another Judge to order pickup of the Infant Child.  That Derico and Presley stated to Judge Lloria James that Parents failed another drug test, when in fact, they had not been administered an additional drug test. Derico and Presley stated in a sworn petition (Exhibit 3) that Parents hair follicle tests were both positive for methamphetamine, when in fact, Parents were never asked to submit to a hair follicle test and never submitted to a hair follicle test.  That due to the intentional misrepresentations that Derico and Presley made to Judge James, she issued a pickup order for the Infant child.

18

71.     DHR, Buckner, and Williams had a duty to supervise their employees to ensure that they did not violate proper protocol, their own policies and procedures, and the law in administering their office, and to make sure that their employees did not manipulate the court system by giving false information to the Court.

72.     As a direct and proximate consequence of the actions and inactions of DHR, Buckner, and Williams  to exercise reasonable and due care under the circumstances, Mother and Father suffered severe economic loss; Mother, Father, Infant Child and Minor Child suffered the loss of the love and affection of Infant Child at a very young and formidable age; Infant Child and Minor Child suffered the loss of the love and affection of each other at very young and formidable ages; Mother has been placed on the Statewide Child Abuse and Neglect Registry; Mother, Father and Minor Child have suffered severe emotional and mental distress and anguish as a result of all Defendants actions and inactions; Mother and Minor Child are now required to see a counselor and psychiatrist due to the emotional and mental distress and anguish caused by all Defendants' actions and inactions.

73.     Mother, Father, Infant Child, and Minor Child demand judgment against DHR, Buckner, and Williams, jointly and severally, by way of injunctive relief and in such an amount of compensatory and punitive damages as may be determined by the trier of facts, plus the costs of this matter.

**COUNT VI**
**FRAUDULENT MISREPRESENTATION**
**Against DHR, Williams, Derico, and Presley**

74.     At all times relevant to this action DHR, Williams, Derico, and Presley made false representations of material facts; they did so knowing that said representations were false; they intended to induce the Plaintiffs to act in reliance on that representation; Plaintiffs acted in

reliance on Defendants' false representations; and Plaintiffs suffered pecuniary damages as a result of their reliance.

75.   DHR, Buckner, Williams, Derico, and Presley intentionally failed to inform Parents that they filed a Complaint for Dependency and that a pickup order was denied by Judge Calvin Williams, who ordered that Infant Child be released to the Father. Further, Defendants, knowing that Judge Williams issued an Order releasing Infant Child to the Father, intentionally forced the Parents to sign a Safety Plan the next day.

76.   Defendants kept Parents from being able to take Infant Child home with them from the hospital and Parents did not know what was happening with their Infant Child once they were forced to leave the hospital. On November 18, 2021, Defendants presented a Safety Plan to Parents to be signed so that their Infant Child was not placed in foster care with strangers. Defendants induced Parents to act in reliance on that misrepresentation.

77.   Once Plaintiffs were made aware that Judge Williams ordered that Infant Child was to be released to the Father, Plaintiffs told DHR they could no longer come on Plaintiffs' property or the property of Paternal Grandparents. As retaliation for the same, Defendants filed yet another Complaint for Dependency misstating and omitting facts that in turn led Judge Lloria James, to issue a pickup order for Infant Child.

78.   Parents acted in reliance on Defendants' misrepresentations and Plaintiffs suffered pecuniary damages as a result of these actions.

79.   As a direct and proximate consequence of the actions and inactions of DHR, Williams, Derico, and Presley, Mother and Father suffered severe economic loss; Mother, Father, Infant Child and Minor Child suffered the loss of the love and affection of Infant Child at a very

young and formidable age; Infant Child and Minor Child suffered the loss of the love and affection of each other at very young and formidable ages; Mother has been placed on the Statewide Child Abuse and Neglect Registry; Mother, Father and Minor Child have suffered severe emotional and mental distress and anguish as a result of all Defendants actions and inactions; Mother and Minor Child are now required to see a counselor and psychiatrist due to the emotional and mental distress and anguish caused by all Defendants' actions and inactions.

80. Plaintiffs demand judgment against DHR, Williams, Derico, and Presley, jointly and severally, by way of injunctive relief and in such an amount of compensatory and punitive damages as may be determined by the trier of facts, plus the costs of this matter.

## COUNT VII
## FRAUDULENT MISREPRESENTATION
### Against Baptist and Unknown Employee

81. At all times relevant to this action, Baptist and Unknown Employee, made a false representation of a material fact; they did so without knowledge of whether it was true or false; that it was intended to induce the Plaintiffs to act in reliance on that representation; and Plaintiffs acted in reliance on Defendants' false representation; and Plaintiffs suffered pecuniary damages as a result of their reliance.

82. Baptist and Unknown Employee intentionally failed to obtain written copies of paperwork from DHR showing that DHR had custody of Infant Child. They relied on verbal information that they were provided by DHR, Buckner, Williams, Derico, and Presley. Baptist intended to induce Plaintiffs to act in reliance on that representation. That Plaintiffs acted in reliance on Defendants' misrepresentations and suffered pecuniary damage as a result.

21

83. Baptist and Unknown Employee kept Parents from being able to take Infant Child home with them from the hospital and Parents did not know what was happening with their Infant Child when they were forced to leave the hospital. Defendants caused all Plaintiffs to suffer the loss of the love and affection of each other and Infant Child and Minor Child at such a young and formidable age.

84. Parents acted in reliance on Defendants' misrepresentations and Plaintiffs suffered pecuniary damages as a result of these actions.

85. As a direct and proximate consequence of the actions and inactions of Baptist and Unknown Employee, Mother and Father suffered severe economic loss; Mother, Father, Infant Child and Minor Child suffered the loss of the love and affection of Infant Child at a very young and formidable age; Infant Child and Minor Child suffered the loss of the love and affection of each other at very young and formidable ages; Mother has been placed on the Statewide Child Abuse and Neglect Registry; Mother, Father and Minor Child have suffered severe emotional and mental distress and anguish as a result of all Defendants actions and inactions; Mother and Minor Child are now required to see a counselor and psychiatrist due to the emotional and mental distress and anguish caused by Baptist and Unknown Employee's actions and inactions.

86. Plaintiffs demand judgment against Baptist and Unknown Employee by way of injunctive relief and in such an amount of compensatory and punitive damages as may be determined by the trier of facts, plus the costs of this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following Prayer for Relief:

    **a. Injunctive relief;**

b.  General damages in an amount to be determined by a fair and impartial jury at  trial;

c.  For special damages in an amount to be determined by a fair and impartial jury at trial;

d.  For punitive damages in an amount to be determined by fair and impartial jury at trial;

e.  Award of costs of suit, including attorneys' fees under 42 U.S.C. § 1983;

f.  Declaratory judgment that defendants' actions violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution and state law; and,

g.  All other, further, and different relief to which Plaintiffs may be justly entitled.

**Respectfully** submitted this the 17th day of November, 2023.

*/s/Lee A. Rankin*
**LEE A. RANKIN (SHU018)**
**ATTORNEY FOR PLAINTIFFS**
**P.O. Box 877**
**MILLBROOK, ALABAMA 36054**
**334-285-0682**
leerbooth@yahoo.com

*/s/John D. Norris*
**JOHN D. NORRIS (NOR044)**
**ATTORNEY FOR PLAINTIFFS**
**P.O. Box 241**
**MILLBROOK, ALABAMA 36054**
**334-285-0682**
norrisj@bellsouth.net